**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM E. MANN, | ) | |
| | ) | CASE NO. 5:09-cv-01376 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff William E. Mann ("Mann") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Mann's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court AFFIRMS the final decision of the Commissioner.

**I. Procedural History**

On February 26, 2001, and March 23, 2001, Mann filed applications for POD, DIB, and SSI alleging a disability onset date of October 15, 2000, and claiming that he was disabled due to a multitude of impairments. His application was denied both initially and upon reconsideration. Mann timely requested an administrative hearing.

On May 24, 2005, an Administrative Law Judge ("ALJ") held a hearing during which Mann, represented by counsel, testified. On September 13, 2005, the ALJ found Mann was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review. Mann filed for review in this Court, Case No. 5:06-cv-01265, and the parties jointly stipulated to a remand.

A new hearing was held on July 20, 2007, before another ALJ. Again, Mann, represented by counsel, testified. Patty Aporian, a community rehabilitation expert, appeared at Mann's request, and Bruce V. Holderead testified as the vocational expert ("VE"). On August 28, 2007, the ALJ found Mann was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

---

[1] After Mann's application was denied, he filed a new application for POD, DIB, and SSI on November 28, 2005, alleging he had been disabled since September 13, 2005. These applications were consolidated with Mann's prior applications after his case was remanded from this Court. (Tr. 620.)

2

## II.  Evidence

*Personal and Vocational Evidence*

Born on October 23, 1964, and age forty-two (42) at the time of his second administrative hearing, Mann is a "younger" person under social security regulations.  *See* 20 C.F.R. § 404.1563(c) &  416.963 (c).  Mann has a ninth grade education and past relevant work as a spray painter, construction laborer, temporary laborer, and scrap yard worker.  (Tr. 636.)

*Medical Evidence*

    *Physical Impairments*

On July 8, 2002, Mann had a colonoscopy, which showed acute diverticulitis.  (Tr. 539.)

On July 13, 2004, Mann presented at a hospital emergency room ("ER") complaining of rectal bleeding.  (Tr. 554.)  Mann told the doctor that it had been going on for about one month and had worsened over the previous couple of days.  *Id*.

On July 14, 2004, Mann underwent a colonoscopy and snare polypectomy.  (Tr. 552, 771.)  The colonoscopy showed inflamed hemorrhoids which were bulging but did not seem to be bleeding, as well as four or five tiny polyps in the rectum.  *Id*.  The polyps were resected and removed.  *Id*.  According to Robert A. Hancock, M.D., the rectal bleeding did not appear to be life threatening, and his vital signs were normal, including hemoglobin and hematocrit.  (Tr. 914.)

One week later, on July 22, 2004, Mann underwent a flexible sigmoidoscopy, which showed severe diverticulosis across the sigmoid colon with multiple spots of erythema and some internal hemorrhoids.  (Tr. 910.)  Mann was prescribed a high-fiber diet and given other diverticulosis precautions.  *Id*.

3

On November 9, 2004, Mann presented at Barberton Hospital with a history of sigmoid diverticulosis, and underwent sigmoid colectomy surgery to remove part of his colon. (Tr. 769-70, 908-09.) Shortly after surgery, Mann was making a good recovery and was healing nicely. (Tr. 765.) Laboratory studies in July 2004, November 2004, and January 2005, showed normal values for his red blood cell counts, hematocrit, and hemoglobin, and no signs of anemia. (Tr. 755, 773, 776, 786-87.)

On January 3, 2005, Nicholas Bisconti, M.D., the surgeon who performed Mann's colectomy, saw him for a follow-up examination. (Tr. 763.) Mann's incision was healing nicely, and he had no complaints. *Id*. Dr. Bisconti noted that Mann had returned to work, which the doctor had previously authorized, and that he was back to regular activity. *Id*.

On March 17, 2005, Robert Geiger, M.D., a pain management specialist, examined Mann and evaluated his complaints of neck and back pain. (Tr. 588-89, duplicated at Tr. 799-800). Dr. Geiger found that Mann had a normal gait and stance, but arose slowly and was in pain when getting onto the exam table. (Tr. 800.) He was mildly inhibited in spontaneous head to shoulder movement. *Id*. He had normal ranges of motion in his shoulders, elbows, wrists, and fingers. *Id*. His grip strength was fairly normal on both sides, and his back examination showed no significant abnormalities. *Id*. His ranges of lumbar motion were limited, but his straight leg raising tests were normal, his reflexes were normal and he had no strong sciatic symptoms. *Id*.

On April 12, 2005, an MRI revealed disc herniations at C3-4, C6-7, and C7-T1 with spinal canal stenosis. (Tr. 581.)

On February 21, 2006, Maureen C. Gallagher, D.O., examined Mann and evaluated his

4

physical condition. (Tr. 820-28.) Dr. Gallagher found good manual muscle testing in his arms and legs, and normal abilities to grasp, manipulate, pinch, and fine coordinate. (Tr. 824.) Dr. Gallagher noted that Mann was 5'9" tall and weighed 117 pounds – forty pounds below his ideal body weight.[2] (Tr. 821.) Dr. Gallagher found that Mann had difficulty changing between sitting and standing positions, and his gait was stiff and slow. (Tr. 822.) Mann was able to bear his own weight and keep his balance. *Id*. According to Dr. Gallagher, Mann should not be required to reach overhead, could lift up to 20 or 25 pounds, but should not perform manual labor. *Id*. Dr. Gallagher also noted that Mann is a smoker with chronic obstructive pulmonary disease ("COPD"). (Tr. 820.)

*Mental Impairments*

On June 18, 2001, psychiatrist Chander Mohan completed a form for the Bureau of Disability Determination. (Tr. 283-287.) Dr. Mohan indicated that Mann had a "sad mood, flat affect, stressed, edgy [and] experienced mood swings." (Tr. 284.) Mann did not exhibit abnormal behavior, his recent and remote memory were intact, and he had difficulty due to chronic pain. (Tr. 285.) Dr. Mohan noted Mann had "much restriction" of daily activities, "much restriction" in interest, habits, and behavior, and his ability to relate to others was poor. *Id*. Dr. Mohan also noted that Mann had "fair" ability to relate to fellow workers, was able to understand and follow instructions only for a short time, was unable to maintain the attention needed to perform simple, repetitive tasks, and was unable to withstand the normal stress and

---

[2] The Commissioner's brief contains a chart compiled from the medical records. The chart indicates that between February 12, 2001 and January 19, 2007, Mann's weight fluctuated from a high of 145 pounds to a low of 114 pounds. (Def.'s Br. at 4-5.) Mann does not assert any inaccuracies in the Commissioner's compilation. (Pl.'s Reply at 2-3.)

5

pressures of daily work activities. (Tr. 286.) He was diagnosed with bipolar disorder, mixed. *Id*.

On August 7, 2001, Donald Ormiston, Ph.D., a state agency psychologist, reviewed Mann's medical records and evaluated his condition under Listing 12.04 for affective disorders. (Tr. 289-91.) Dr. Ormiston found Mann was moderately limited in his ability to understand and remember detailed instructions, but found no evidence of limitation in other areas addressing understanding and memory. (Tr. 289.) In the section addressing one's ability to sustain concentration and persistence, Dr. Ormiston opined that Mann was moderately limited in four of eleven categories, but found no significant limitation or no evidence of limitation in the remaining seven categories. *Id*. In the section addressing social interaction, Mann was found to be moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors, as well as in his ability to get along with coworkers without distracting them or exhibiting behavioral extremes. (Tr. 290.) In the section addressing adaptation, Mann was found to be moderately limited in his ability to appropriately respond. *Id*. Dr. Ormiston noted that Mann had some problems with concentration, motivation, mood swings, and decreased activities of daily living and social activities. (Tr. 291). Mann was, however, able to care for four children and do some chores. *Id*. He had trouble accepting change and criticism due to irritability, and his motivation was low, but he was able to complete one and two-step tasks and superficially interact with others. *Id*. Dr. Ormiston also completed a Psychiatric Review Technique form. (Tr. 293-306.) Mann had mild restrictions in activities of daily living, moderate restrictions in maintaining social functioning and in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (Tr. 303.) There was no

6

evidence to establish the presence of "C" criteria. (Tr. 304.)

On September 11, 2001, Mann attempted suicide through an overdose of his prescription drugs. (Tr. 364-65.)

On March 21, 2002, Robert F. Dallara, Jr., Ph.D., a psychologist, examined Mann and evaluated his mental condition. (Tr. 505-10.) Dr. Dallara diagnosed Mann with bipolar disorder, and alcohol/cannabis abuse in self-reported remission. (Tr. 509.) He was ascribed a current Global Assessment of Functioning ("GAF") score of fifty (50).[3] *Id.* Mann stated, at the time, that he was 5'8" tall and weighed 145 pounds. (Tr. 506.) Dr. Dallara concluded that Mann's ability to remember and carry out simple one and two step instructions and ability to maintain attention and concentration was mildly impaired. (Tr. 509.) His ability to relate to others and his ability to withstand the stress and pressure associated with working, however, was moderately impaired. (Tr. 509-10.)

On April 9, 2002, Caroline Lewin, Ph.D., a state agency psychologist, reviewed Mann's medical records, and indicated that he had moderate restrictions in the following areas: his ability to understand and remember detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workweek without interruptions from psychologically based symptoms; to interact appropriately with the general public; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them; and, responding

---

[3] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

appropriately to changes in the work setting. (Tr. 512-13.) Dr. Lewin did not find any significant limitations in other areas. *Id.* Dr. Lewin concluded that Mann was capable of coping with simple instructions and tasks. (Tr. 514.)

On February 27, 2006, David Dietz, Ph.D., a state agency psychologist, reviewed Mann's medical records and found for the most part that he had no significant limitations in most areas of mental functioning. (Tr. 830-31.) He had moderate limitations in his ability to work in coordination with others without being distracted by them. (Tr. 830.) He also had moderate limitations in accepting instructions, responding appropriately to criticism from supervisors, and getting along with co-workers. (Tr. 830A.) According to Dr. Dietz, Mann's cognitive functioning was intact, and his activities of daily living were not significantly limited due to psychological issues. (Tr. 831.) He had at most a mild impairment of his social abilities, ability to carry out simple instructions, ability to deal with stress, and ability to concentrate. (Tr. 831.) Dr. Dietz concluded that Mann was able to understand, remember, and follow simple instructions, and could likely perform tasks of moderate complexity as well. (Tr. 831.) He was able to maintain attention, concentration, and persistence for routine and repetitive tasks. (Tr. 831.)

On February 17, 2006, Dr. Dallara examined Mann and evaluated his mental condition. (Tr. 815-19.) Dr. Dallara reported that Mann was appropriately groomed and clothed, and had no signs of being under the influence of alcohol or illegal drugs. (Tr. 816.) He had intelligible, spontaneous speech, and had logical thoughts. *Id.* He complained of mood changes. *Id.* He was alert and oriented, and knew his age, birthday, and social security number. (Tr. 817.) He was able to count backward from 20 to 1, and said the alphabet correctly. *Id.* He did fairly well

8

at serial subtraction. *Id*. Dr. Dallara concluded that Mann had a mild impairment of his ability to relate to others, as a result of mood difficulties, but was generally able to relate adequately during the examination. (Tr. 818.) His ability to understand instructions was adequate, and his ability to remember and carry out simple one and two-step instructions might be mildly impaired. *Id*. His ability to maintain attention and concentration appeared to be mildly impaired, but he had no impairment of persistence or pace. *Id*. He was able to withstand stress and pressure associated with day-to-day work activity with a mild degree of impairment due to mood difficulties. *Id*.

### *Hearing Testimony*

At the hearing, Mann testified to the following:

- His bipolar disorder caused him to "get an attitude easy," occasionally caused him to hear voices, and to experience manic episodes. (Tr. 977-78.)

- He was prescribed Paxil, Zyprexa, and Vistaril for his bipolar disorder. (Tr. 978.) When he worked at a scrap yard in 2002, he had to stop taking his medications because he could not function and they often rendered him incoherent. (Tr. 979.)

- He suffers from rectal bleeding eight or nine times a month despite having undergone colon surgery . (Tr. 979-80.) Since the surgery, he has been unable to gain weight and weighed only 115 pounds at the time. (Tr. 980.)

- He was has back and neck pain, as well as migraines, and has been prescribed OxyContin. (Tr. 981.)

- He has seen a surgeon for his back pain, who told him that, due to a prior cervical fusion, further surgery would wipe out motion in those areas. (Tr. 982.)

- He suffers from COPD, which leaves him short-winded. (Tr. 983.) He avoids climbing stairs. He was prescribed Advair and Albuterol. (Tr. 984.)

- Over the last few months, he spent more time in bed than out due to a combination of pain and depression. (Tr. 984-85.)

- He has undergone two hernia surgeries, the most recent in 2004 or 2005. (Tr.

9

986.)

- He had not used alcohol for years, and, although he was trying to quit, he was still smoking. (Tr. 987.)

The ALJ posed the following hypothetical to the VE:

.... [T]he hypothetical worker is 42 years old, ninth grade education, no relevant vocational training.
     Exertionaly [sic], this hypothetical worker can do a range of sedentary work, and specifically what I mean by that is the hypothetical worker can stand or walk for two hours, sit for six hours, lift, carry, push or pull a maximum of 10 pounds.
     The hypothetical worker is further limited in that he is precluded from using ladders, ropes and scaffolds. He is precluded from working above shoulder level with, with either of his upper extremities. He's precluded from tasks that involve hyperextension of the neck, by which, I mean, looking at the ceiling.

***

     And finally, this hypothetical worker is limited to simple, routine, low-stress tasks that are not done in public. That involves only limited and superficial interaction with supervisors and co-workers, and that do not involve arbitration, confrontation, negotiation, directly the work of others, or being responsible for the safety of others.

***

[T]his hypothetical worker must avoid concentrated exposure to fumes, odors, and dust, gases and poorly ventilated areas.

(Tr. 994, 998.)

The VE testified that the hypothetical worker could not perform any of Mann's past relevant work. (Tr. 995.) The VE testified, however, that there are a number of sedentary, unskilled jobs that such a person could perform. *Id*. He identified the following jobs: addresser - D.O.T. § 209.587-010; document preparer - D.O.T. § 249.587-018; and ticket checker - D.O.T. § 219.587-010. (Tr. 995-96, 998.)

Mann's counsel asked the VE whether the hypothetical person could perform the jobs

10

identified if he was limited to simple one to two-step tasks. (Tr. 999.) The VE responded that the additional limitations would preclude the jobs identified as well as any others. *Id*. Mann's counsel also asked the VE whether the hypothetical person could perform the jobs identified if he was off task fifteen to twenty percent of the time. (Tr. 1000.) The VE again responded in the negative. *Id*.

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[4]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Mann was insured on his alleged disability onset date, October 15, 2000 and remained

---

[4] The entire five-step process entails the following: First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

insured through March 31, 2008. (Tr. 621.) Therefore, in order to be entitled to POD and DIB, Mann must establish a continuous twelve month period of disability commencing between October 15, 2000 and the date of the ALJ's decision. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits under the Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Mann established medically determinable, severe impairments, due to chronic obstructive disease in a smoker, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, sigmoid diverticulitis surgically treated in November 2004, bipolar disorder, and alcohol and marijuana abuse/dependency in remission. (Tr. 623.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 627.) Mann is unable to perform his past work activities, but has a Residual Functional Capacity ("RFC") for a limited range of sedentary work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Mann is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal

standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI. Analysis

On renewed appeal, Mann claims the ALJ erred by: (1) finding that Mann was capable of performing jobs that exist in substantial numbers in the national economy; and (2) failing to find that Mann met or equaled Listing § 5.08.

### *Number of Jobs in the National Economy*

Mann argues that the ALJ failed to carry his burden at Step Five of the sequential analysis because the hypothetical question posed to the VE was incomplete and inaccurate. (Doc. No. 18 at 7-9.)

A hypothetical question must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by the evidence in the record, it need not reflect unsubstantiated allegations by claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

Mann argues that the ALJ should have included additional limitations in the hypothetical

posed to the VE. (Doc. No. 18 at 8-9.) Specifically, Mann's counsel asked the VE whether the hypothetical person could perform the jobs identified if he was limited to simple one to two-step tasks. (Tr. 999-1000.) The VE responded that the additional limitations would preclude the jobs identified as well as any others. *Id*. Mann's counsel also asked the VE whether the hypothetical person could perform the jobs identified if he was off task fifteen to twenty percent of the time. (Tr. 1000.) The VE again responded in the negative. *Id*. Mann, citing to the record, asserts that there was support for such limitations. (Tr. 289-90, 512-13, 818, 830-31.)

Mann's citations to the record, however, all support the accuracy of the hypothetical posed by the ALJ. Dr. Ormiston specifically stated that Mann "can complete 1-2 step tasks." (Tr. 291.) In addition, Dr. Ormiston also opined that Mann's ability to carry out detailed instructions was only moderately limited. (Tr. 289.) Dr. Lewin also found that Mann could perform simple tasks and that he was only moderately limited in his ability to complete a normal workday and workweek without interruption from psychologically based symptoms. (Tr. 512-14.) Dr. Dallara found only mild limitations in Mann's ability to carry out simple one or two-step instructions. (Tr. 818.) Finally, Dr. Dietz found no evidence of any limitations in Mann's ability to carry out short, simple instructions and only insignificant limitations in his ability to carry out detailed instructions. (Tr. 830.) A hypothetical question is not erroneous where at least one doctor substantiates the information contained in the question. *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987) (*per curiam*).

In this case, the ALJ reasonably concluded that Mann could perform "simple, routine, low-stress tasks." There was no basis for concluding that Mann would be off task twenty percent of the time. Furthermore, while all of the medical sources appear to agree that Mann

could carry out simple 1-2 step tasks, the medical sources do *not* all agree that simple 1-2 step tasks demarcates the outer boundaries of Mann's abilities. As such, the ALJ's hypothetical setting out limits of "simple, routine, low stress tasks" was not inaccurate merely because a task was not limited to a maximum of two steps. Because the VE's answers were given in response to a hypothetical question that accurately portrayed Mann's impairments, the ALJ could justifiably rely on the VE's conclusions. *See Varley*, 820 F.2d at 781; *Marziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240 (6th Cir. 1987). Mann's counsel had ample opportunity to, and did, cross-examine the VE at the hearing. The ALJ observed the VE's testimony and determined that the testimony was reliable concerning the type and availability of jobs Mann could perform. Therefore, there was substantial evidence to support the ALJ's finding that Mann was able to perform a limited range of sedentary work existing in significant numbers in the national economy. Thus, Mann's assignment of error is without merit.

### *Listing 5.08*

Mann argues that, at 118 pounds and 5'9" tall, he meets Listing § 5.08, as it was revised on April 1, 2009 – one year and eight months *after* the ALJ rendered his decision. Mann contends that, because his case was still pending before the Appeals Council at the time of the revision, he should have received the benefit of the revised listing. (Doc. No. 22 at 1-2.) The Commissioner, however, asserts that the ALJ's decision was supported by substantial evidence given the criteria of the listing at the time the ALJ's decision was actually issued. (Doc. No. 21 at 10-14.)

Prior to the 2009 revision, Listing § 5.08 – the version in effect as of the date of the hearing and the ALJ's decision – contained the following criteria:

> 5.08 Weight loss due to any persisting gastrointestinal disorder: (The following weights are to be demonstrated to have persisted for at least 3 months despite prescribed therapy and expected to persist at this level for at least 12 months.) With:
>
> A. Weight equal to or less than the values specified in Table I or II; or
>
> B. Weight equal to or less than the values specified in Table III or IV and one of the following abnormal findings on repeated examinations:
>
> 1. Serum albumin of 3.0 gm. per deciliter (100 ml.) or less; or
>
> 2. Hematocrit of 30 percent or less; or
>
> 3. Serum calcium of 8.0 mg. per deciliter (100 ml.) (4.0 mEq./L) or less; or
>
> 4. Uncontrolled diabetes mellitus due to pancreatic dysfunction with repeated hyperglycemia, hypoglycemia, or ketosis; or
>
> 5. Fat in stool of 7 gm. or greater per 24-hour stool specimen; or
>
> 6. Nitrogen in stool of 3 gm, or greater per 24-hour specimen; or
>
> 7. Persistent or recurrent ascites or edema not attributable to other causes.

20 C.F.R. Part 220 App. 1. (2007).

The ALJ stated that he "considered counsel's argument that Mr. Mann's diverticulitis, surgically treated in November 2004, satisfies the requirements of Section 5.08. However, the argument is unpersuasive because the record fails to document Mr. Mann has had the degree of weight loss alone and/or weight loss associated with other pertinent findings required under Section 5.08A and B." (Tr. 627.) Indeed, pursuant to the "A" criteria of the listing, Mann's weight would only qualify under Table I if he weighed 109 pounds or less. Mann's lowest weight in the medical records was 117 pounds. Depending on whether Mann was 68" or 69" tall (medical records contain both measurements), the "B" criteria of the listing requires a respective weight of 116 or 119 pounds or less, pursuant to Table III. Assuming *arguendo* that 119 pounds

16

is the correct criterion, Mann would still have to meet one of the additional abnormal findings. Mann has not argued that he met any of the additional criteria.

It is clear that Mann is not arguing that the ALJ's decision was unsupported by substantial evidence under the listing in effect at the time of the ALJ's decision, but rather the propriety of enforcing a decision where the relevant listing was revised in Mann's favor while his case was pending on appeal. The revised listing requires only the following: "[w]eight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." 20 C.F.R. Part 404, App. 1, Listing § 5.08. Specifically, Mann asserts that, because there are two recorded weight measurements in a six-month span that put him under a BMI of 17.50, he should be found to meet Listing § 5.08.[5]

While Mann may have arguably met Listing § 5.08, as it was later revised, Mann's counsel concedes that he has been unable to find any controlling case law that stands for the proposition that a listing should be applied to a claimant retroactively where the listing criteria was changed while the claimant's case was pending before the Appeals Council. (Doc. No. 22 at 1-2.)

The Social Security Act "does not generally give the [Social Security Administration] the

---

[5] The record shows that on October 27, 2005, Mann measured 5' 8.5" and weighed 114 pounds – a Body mass Index ("BMI") of approximately 17.1. (Tr. 813.) On February 21, 2006, Mann was measured at 5'9" tall, and weighed 117 pounds – a BMI of approximately 17.3. (Tr. 821.)

BMI = (Weight in Pounds / (Height in Inches) x (Height in Inches)) x 703.

*See* 20 C.F.R. Part 404, App. 1., Listing § 5.00(G).

power to promulgate retroactive regulations." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (*citing* 42 U.S.C. § 405(a); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988)). In *Combs*, the Sixth Circuit was confronted with a claimant who filed an application for disability benefits in 1996 when obese claimants were afforded a presumption of disability. *Id*. However, in 1999, obesity was deleted from the list of conditions that benefitted from this presumption and, when the case came before an ALJ in 2003 on remand from an administrative appeal, the claim was denied due to the deletion of the obesity listing. *Id*. The Sixth Circuit found that, because the changed listing had its effect on claimant after the new rule's effective date – when the claim was administratively adjudicated – "it was not impermissibly retroactive in its effect." *Id*. The Court explained as follows:

> [N]ot all statutes raise retroactivity concerns. "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . ." 511 U.S. at 269; *Campos v. INS*, 16 F.3d 118, 122 (6th Cir. 1994); *Patel v. Gonzales*, 432 F.3d 685, 690 (6th Cir. 2005). The application of law existing at the time of decision does not violate the presumption against retroactivity unless the statute in question has retroactive effects. *Landgraf*, 511 U.S. at 269-70; *Patel*, 432 F.3d at 690. A statute has retroactive effects if the statute
>
>> attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. . . . [F]amiliar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.
>
> *Landgraf*, 511 U.S. at 270.
>
> The factors articulated in *Landgraf* -- fair notice, reasonable reliance, and settled expectations -- weigh against finding a retroactive effect. *See id.* at 269-70. It can hardly be argued that claimants become obese or otherwise become impaired in reliance on the availability of the presumption in the listing. Nor is there any indication that they file their claims, or decide what to put in their claims, based on how the agency determines whether they meet the statutory requirements for

18

>disability eligibility. Similarly, claimants have no settled expectation that the agency will use one as opposed to another algorithm for determining whether the statutory requirements are met. Finally, there is no basis for claimants to argue that they need "fair notice" of a change in the step three presumptions.

*Combs*, 459 F.3d at 646; *see also Frost v. Barnhart*, 314 F.3d 359 (9th Cir. Wash. 2002) (finding that application of the revised version of Listing 12.03, which went into effect September 20, 2000, would have been impermissibly retroactive if applied to claimant's case decided two years earlier in 1998).

Here, Mann's argument is even less compelling than the claimant in *Combs*. At the time the ALJ issued his decision, the ALJ applied the rule actually in effect and not the future revised rule. Mann had no reasonable expectation of being afforded the benefit of the revised rule that would not take effect for over a year after his case had been adjudicated. As such, Mann's assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

s/ Greg White
U.S. Magistrate Judge

Date: June 9, 2010